DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION

SUCRE HENRIQUEZ )
 )  D.C. Crim. App. No.2002-153
    *Appellant,* )
 )  Super. Ct. Crim. No. F201-1999
v. )
 )
GOVERNMENT OF THE VIRGIN ISLANDS )
 )
    *Appellee.* )
 )

On Appeal from the Superior Court of the Virgin Islands,
The Honorable Ishmael A. Meyers, presiding

Considered: December 8, 2009
Filed: July 28, 2010

**BEFORE: CURTIS V. GÓMEZ,** Chief Judge of the District Court of the Virgin Islands; **RAYMOND FINCH,** Judge of the District Court of the Virgin Islands; and **PATRICIA STEELE,** Judge of the Superior Court, Division of St. Croix, sitting by designation.

ATTORNEYS:

Richard H. Dollison, Esq.
James Bernier, Jr., Esq.
St. Thomas, U.S.V.I.
    *For the Appellant.*

Tiffany V. Robinson, AAG
St. Thomas, U.S.V.I.
    *For the Appellee.*

**MEMORANDUM OPINION**

**PER CURIAM,**

Sucre Henriquez ("Henriquez") appeals his convictions in the Superior Court[1] of the Virgin Islands for aggravated rape, unlawful sexual contact in the first degree, and child abuse. For the reasons stated below, the Court will reverse Henriquez's convictions and remand for a new trial.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Henriquez was arrested on April 20, 1999, and charged in a six count Information alleging that he had sexual intercourse with, and sexually abused, his girlfriend's daughter, L.R.P (also referred to as "L.S.P."). At that time, L.R.P. was eight years old. L.R.P.'s mother, Maria Pilier ("Pilier"), Henriquez's girlfriend, was also charged.

The information charging Henriquez was amended three times. The third amended information contained six counts. He was charged as follows: Count I, aggravated rape; Count II, aggravated rape; Count III, unlawful sexual contact in the first degree; Count IV, unlawful sexual contact in the first degree;

---

[1] Prior to 2005, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, this Court employs the terms Superior Court and Superior Court Judge.

Count V, child abuse; and Count VI, child abuse.

The case against Henriquez was later consolidated with the case against Pilier. The consolidated matters were tried to a jury from June 3 to June 7, 2002. The government put on a number of witnesses. Henriquez and Pilier each testified on their own behalf. The Court also called as a witness Kim Wilson Burgado Aska ("Aska"). The jury found Henriquez guilty of all six counts. The Superior Court sentenced Henriquez to 17 years each for Counts I and II; 15 years each for Counts III and IV; and 15 years each for Counts V and VI, with all the sentences to run concurrently. Henriquez was also required to register as a sex offender and pay $75 in court costs. Henriquez timely filed this appeal.

Henriquez raises four issues for review by this Court. He argues that the trial court erred when it (1) failed to dismiss the Information because it contained duplicitous and multiplicitous counts, (2) admitted the testimony of the government's expert witness, (3) admitted L.R.P.'s report card while not allowing him access to her other school records, and (4) examined Pilier.

## II. DISCUSSION

### A. Jurisdiction

This Court has jurisdiction to review judgments and orders of the Superior Court in criminal cases. *See* Revised Organic Act § 23A, 48 U.S.C. § 1613a; Act No. 6687 § 4 (2004).

### B. Standard of Review

#### 1. Superior Court Actions

The Third Circuit has defined the right to be heard by a fair and impartial tribunal as one of the basic elements of due process. *See Sill v. Pennsylvania State University*, 462 F.2d 463, 469 (3d Cir. 1972); *see also United States v. Cross*, 128 F.3d 145, 148 (3d Cir. 1997) ("The right to a fair and impartial trial for the resolution of guilt lies at the very heart of the constitutional guarantee of due process."). "[I]f someone is deprived of his right to an impartial tribunal, then he is denied his constitutional right to due process, regardless of the magnitude of the individual and state interest at stake, the risk of error and the likely value of additional safeguards." *United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 138 (3d Cir. 1985).

We have held that no person [may] be deprived of his

> interests in the absence of a proceeding in which he
> may present his case with assurance that the arbiter is
> not predisposed to find against him. . . . That
> assurance is absent — and judicial conduct improper —
> whenever a judge appears biased, even if he actually is
> not biased. . . . Public confidence in the judicial
> system turns on the appearance of neutrality and
> impartiality in the administration of justice. . . .
> Thus, even if the trial judge here was not actually
> biased — and we do not speculate as to his state of
> mind [—] the mere appearance of bias on his part could
> still diminish the stature of the judicial process he
> represents. . . . In other words, justice must satisfy
> the appearance of justice.

*Gov't of the V.I. v. Williams*, No. 08-3521, 2010 U.S. App. LEXIS 5532, at *2-3 (3d Cir. Mar. 17, 2010) (unpublished) (internal quotation marks and citations omitted).

### III. ANALYSIS

#### A. Superior Court's Actions

Henriquez argues that the Superior Court abandoned its impartiality by engaging in an impeaching line of questioning with Pilier, and calling its own witness to impeach her.

The trial judge is "not merely a moderator, but is the governor of the trial." *United States v. Beaty*, 722 F.2d 1090, 1092 (3d Cir. 1983) (quoting *Quercia v. United States*, 289 U.S. 466, 469 (1933)). As the Third Circuit has explained:

> We have long abandoned the adversary system of litigation
> which regards opposing lawyers as players and the judge
> as a mere umpire whose only duty is to determine whether

> infractions of the rules of the game have been committed. A trial is not a contest but a search for the truth so that justice may properly be administered. For the purpose of eliciting the germane facts, a judge may on his own initiative and within his sound discretion interrogate witnesses.

*Id.* (quoting *Riley v. Goodman*, 315 F.2d 232, 234 (3d Cir. 1963)). At the same time, a trial judge must not "abandon his proper role and assume that of an advocate." *Id.* (quoting *United States v. Green*, 544 F.2d 138, 147 (3d Cir. 1976), *cert. denied*, 430 U.S. 910 (1977)). "The judge's participation must never reach the point where it appears clear to the jury that the court believes the accused is guilty." *United States v. Nobel*, 696 F.2d 231, 237 (3d Cir. 1982) (citation and quotations omitted)).

The line between permissible and impermissible conduct of a trial judge is not absolute. *See United States v. Wilensky*, 757 F.2d 594, 598 (3d Cir. 1985). "The task of an appellate court asked to review a trial judge's conduct is therefore a difficult one." *Beaty*, 722 F.2d at 1093. The Court must balance the facts and circumstances of each case to determine whether the conduct of the trial judge was "so prejudicial as to deprive [the] defendant [] of a fair, as opposed to a perfect, trial." *Id.*; *see also Wilensky*, 757 F.2d at 598 (explaining that while "a few isolated, allegedly prejudicial comments by the trial judge are not sufficient to warrant reversal," reversal is required "[w]hen

unfair judicial procedures result in a denial of due process");
*Riley v. Goodman,* 315 F.2d 232, 234 (3d Cir. 1963) ("The pattern of due process is picked out of the facts and circumstances of each case").

In this case, once the government had presented its case, Henriquez testified on his own behalf. Then Pilier testified on her own behalf. The government cross examined Pilier. Pilier testified on cross examination that she worked on a particular day. (J.A. 614-15.)

Over objections by counsel for both defendants and for the government, the trial court then embarked on what appeared to be a mission to impeach her on the very point - her work status - about which she had testified.

> THE COURT: All right. Well, I have some questions here.
>     I have an affidavit of financial status signed by Ms. Pilier, and the Court can take judicial notice of -. . .
>
> [Pilier's] ATTORNEY HODGE: Your Honor, can I approach the bar?
>
> [Prosecuting] ATTORNEY DICK: Your Honor, I haven't had a chance, an opportunity to see it.
>
> THE COURT: Show it to Mr. Dick. Do you want to come to side bar?
>
> [side bar as follows] . . .
>
> [Pilier's] ATTORNEY HODGE: Your Honor, I'm going to object Your Honor. Objection to this case -- objection in this case, in asking the

>    witness any questions. . . .
>
> [Henriquez's] ATTORNEY BRUSCH: On behalf of my
>    client, Sucre Henriquez, I think it's also
>    prejudicial to my client. I think it's
>    horrendous for this Court to try to impeach a
>    witness. . . .
>
> [Prosecuting] ATTORNEY DICK: Your Honor, I think
>    it's a valid point that, in fact, it's
>    impeachment of her credibility. It may not
>    be germane to the issue of whether or not
>    there was abuse or not, or whether she knew
>    about abuse, but she apparently -- we have
>    already impeached her on it. . . .
>
> THE COURT: I'm going to overrule your objection
>    for the record.
>
> [side bar ended]
>
> THE COURT: Mrs. Pilier, I'm going to show you a
>    document that you signed. This is the
>    Court's record. Is that your signature?
>
> THE WITNESS: Yes.
>
> THE COURT: All right. That document asks a
>    question, right, as to whether or not you
>    were employed. And what do you have down
>    there.
>
> THE WITNESS: This is in English, and I don't
>    understand. I can't read this. I don't
>    understand it. It's in English.
>
> THE COURT: Did anybody read this for you? Did they
>    read it for you?
>
> THE WITNESS: I believe so. I believe yes. I think
>    it was right in here. . . .
>       I know that's my signature, but I don't
>    recall the document.

(J.A. 615-21.) In the face of Pilier's uncertainty and apparent

difficulty with English, the Court was undeterred. Remarkably, the trial court called its own witness, Kim Wilson Burgado Aska ("Aska") to continue the disquisition of Pilier.

> THE COURT: Okay. Then we'll have to call Miss Aska up here. This is notarized by Miss Aska.
> Okay. Well, if she does not remember, we'll have to take a five-minute break and tell Miss Aska to come up, because she is the one -- Miss Aska is the one who notarized this statement. All right.
> So, call Miss Aska. She may be over to the jury fixing up the food, but I need her right away. . . .
>
> THE COURT: Okay, Miss Aska, you're here as a witness, not as a translator.
> Okay? Now, I want you to come forward. I want you to look at this document and tell me if you remember this document. And tell me if you remember Miss Pilier, Mrs. Pilier?
>
> Ms. ASKA: Yes. This is an affidavit of financial status that was taken by me when Miss Pilier was arrested. . . .
>
> THE COURT: And where do you work?
>
> MS. ASKA: I work at the Territorial Court of the Virgin Islands.
>
> THE COURT: And do you sometimes act as a Spanish/English interpreter?
>
> MS. ASKA: Yes, I do.
>
> THE COURT: And you say you remember that document?
>
> MS. ASKA: Yes, I do. It's an affidavit of financial status that was taken in when she was arrested and came for advice of rights.
>
> THE COURT: So how did you communicate with Miss

>       Pilier?
>
> MS. ASKA: I spoke to her in Spanish.
>
> THE COURT: And you wrote down her answers?
>
> MS. ASKA: Yes, I did.
>
> THE COURT: And when you notarized the statement, what did you ask her?
>
> MS. ASKA: I asked her to review the information. I read it to her, and I asked her if anything needed to change or if everything was correct.
>
> THE COURT: What was her answer?
>
> MS. ASKA: She said that everything was correct.
>
> THE COURT: When you say you read it to her, you read it to her in Spanish or English?
>
> MS. ASKA: I read it to her in Spanish, line by line.
>
> THE COURT: All right. And she said that everything was correct?
>
> MS. ASKA: She said everything was fine, and that no changes needed to be made.
>
> THE COURT: What does she have here as her employment status?
>
> MS. ASKA: She said that she was unemployed at that time.

(*Id.* 622-26.)

The trial court can call its own witness. *See* Fed. R. Evid. 614. However, a court cannot do so if it abandons its role and takes on the role of an advocate. In a case, such as this one,

where the defendant objects to the trial court's interrogating a witness and calling its own witness, an appellate court reviews the court's actions for an abuse of discretion. *United States v. Wiggins*, 293 Fed. Appx. 907, 908 (3d Cir. 2008) (unpublished) ("As to the one question [by the court] to which the defendant did object, our review is for abuse of discretion."). "If we find that the District Court abused its discretion, we must then determine whether the questioning was harmless or prejudiced [the defendant's] substantial rights." *Id.* "Our review on appeal is deferential. The trial judge does not err unless [his] conduct was 'inimical and partisan, clearly evident and prejudicial.'" *Id.* at 909 (citing *Riley*, 315 F.2d at 234-35).

In this case, the trial court's conduct was wholly inappropriate and clearly partisan. The court questioned Pilier in order to show that she had lied either on the stand or in her financial affidavit. When that line of questioning became impeded by Pilier's lack of proficiency with English, the court called its own witness to complete Pilier's impeachment.

This was not a case of the court asking questions to clarify testimony on some issue crucial to the determination of guilt or innocence. Rather, the trial judge impeached Pilier on a collateral matter. This line of impeaching questioning could not have helped the jury determine facts relevant to either

defendants' guilt or innocence. It did not clarify any issue properly before the jury, except that it showed Pilier had been dishonest. We find the trial court abused its discretion in taking on the partisan role of prosecutor to impeach Pilier.

Next we must determine whether the trial court's actions prejudiced Henriquez. The United States Court of Appeals for the Third Circuit has cited the Eighth Circuit, which holds "in order to reverse on grounds of excessive judicial intervention, the record must . . . leave the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." *Wilensky*, 757 F.2d at 598 (citing *Warner v. Transamerica Insurance Co.*, 739 F.2d 1347, 1351 (8th Cir. 1984)).

In this case, the trial judge made two shocking decisions: to impeach Pilier himself, and to call his own witness to facilitate that impeachment. The court's questioning took on an egregious air of advocacy and partiality, impacting the fairness of the entire trial.

Another Eight Circuit case, *United States v. Bland*, 697 F.2d 262 (1983), is somewhat analagous. In that case, the court found that the trial court erred by intervening to examine several of the government's witnesses, not just to clarify testimony, but to "establish [points] favorable to the government." *Id.* at 263.

The trial judge also cross-examined a defense witness and the defendant himself. In questioning the defense witness, it was "apparent the judge was challenging the statements of the witness . . . . the examination was an immediate follow-up of the government's cross-examination and appears as further cross-examination; moreover, the questioning nature of the judge's examination clearly flavors the interrogation as prosecutorial in kind." *Id.* at 264. The defendant himself took the stand and "after the government cross-examined, the judge in further extension of the government's cross-examination, extensively interrogated the defendant." *Id.* The Eight Circuit reversed the defendant's conviction and remanded for a new trial, finding that the trial court had taken on the role of prosecutor, tainting the entire trial process. The court explained:

> We think the balance is adversely tipped against the defendant in a criminal trial where the judge's role loses its color of neutrality and tends to accentuate and emphasize the prosecution's case. A trial judge's isolated questioning to clarify ambiguities is one thing; however, a trial judge cannot assume the mantle of an advocate and take over the cross-examination for the government to merely emphasize the government's proof or to question the credibility of the defendant and his witnesses. A judge's slightest indication that he favors the government's case can have an immeasurable effect upon a jury. A trial judge should seldom intervene in the questioning of a witness and then only to clarify isolated testimony. A trial court should never assume the burden of direct or cross-examination. . . . although the judge did

> not intend to prejudice the defendant's trial in
> this case, the appearance of aiding the government
> is clearly apparent.

*Id.* at 266.

Similarly, in this case, the court lent its imprimatur to the government's case. It follows that, once the trial court had abandoned its impartial role and given the jury the impression that one defendant was not credible, the entire process was irretrievably tainted as to both defendants. Pilier's impeachment affected Henriquez's right to a fair trial because the defendants were tried together on charges arising from one course of conduct, and Pilier was accused of being complicit in Henriquez's abuse. *See, e.g. Kinser v. Cooper*, 413 F.2d 730, 733 (6th Cir. Ohio 1969) (finding prosecutor's comment regarding one defendant, accused aider and abetter, choosing not to testify, was prejudicial to accused aider and abetter's codefendant). Where, as here, "the defendant's guilt or innocence rests almost exclusively on the jury's evaluation of the witnesses' demeanor and credibility, we cannot ignore questioning undertaken by a judge which so clearly signals to the jury the judge's partisanship." *United States v. Nazzaro*, 472 F.2d 302, 310 (2d Cir. 1973) (reversing conviction and remanding for a new trial where "[t]he trial judge often assumed the prosecutor's role, interposing questions which clearly indicated disbelief in the

defendant's testimony.").

In *United States v. Victoria*, 837 F.2d 50 (1988), the United States Court of Appeals for the Second Circuit reviewed a trial in which the judge had questioned both defendants, conveying to the jury the distinct impression that he found both incredible. The actions of the judge in the instant case went even further, not only questioning a defendant in a manner that conveyed disbelief, but calling his own witness to highlight her dishonesty.

We find that the trial court's interrogation of Pilier and its decision to call its own witness prejudiced Henriquez's substantial rights by indicating to the jury that the judge believed one of the defendants was dishonest, an impression which likely tainted the jury's view of Henriquez.[2]

## IV. CONCLUSION

Accordingly, this Court will reverse Henriquez's conviction and remand to the Superior Court for a new trial.

---

[2] Given our disposition, we decline to review Henriquez's remaining claims.